# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

CNH CAPITAL AMERICA LLC,

    Plaintiff,

vs.

TIM McCANDLESS, d/b/a
McCANDLESS FARMS,

    Defendant.

No. C05-2087

**RULING ON MOTIONS FOR
SUMMARY JUDGMENT**

_____

## TABLE OF CONTENTS

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.* *LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . 3

*IV.* *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*V.* *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . 6

*VI.* *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT* . . . . . . . . . . . . 9
    *A.* *Breach of Contract* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *B.* *Conspiracy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    *C.* *Aiding and Abetting* . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    *D.* *Fraudulent Misrepresentation* . . . . . . . . . . . . . . . . . . . . . 20

*VII.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

On the 1st day of May, 2007, this matter came on for telephonic hearing on the Motion for Summary Judgment on Count III of Defendant's Counterclaims (docket number 20) filed by Plaintiff on December 22, 2006, and on the Motion for Summary Judgment (docket number 31) filed by Defendant on March 14, 2007. Plaintiff appeared by its attorneys, Scott Long and Sean P. Moore. Defendant appeared by his attorney, William W. Graham.

## II. PROCEDURAL BACKGROUND

On December 21, 2005, Plaintiff CNH Capital America LLC filed a Complaint against Defendant Tim McCandless, d/b/a McCandless Farms. In its Complaint, Plaintiff alleged one count of breach of contract based on Defendant's failure to pay the amounts due under nine retail installment contracts. On April 4, 2006, Plaintiff filed its First Amended Complaint, which added three additional counts against Defendant. Plaintiff's additional allegations are: conspiracy (Count II), aiding and abetting (Count III), and fraudulent misrepresentation (Count IV).

On May 1, 2006, Defendant filed his Answer, Affirmative Defenses, Counterclaim and Jury Demand. In his Counterclaim, Defendant alleges three counts: aiding and abetting (Count I), breach of the covenant of good faith and fair dealing (Count II), and abuse of process (Count III). On May 19, 2006, Plaintiff filed a Motion to Dismiss Counterclaims for Failure to State a Claim Upon Which Relief Can Be Granted. On August 9, 2006, the Court entered an Order granting Plaintiff's motion to dismiss on Counts I and II and denying its motion on Count III of Defendant's Counterclaim.

Plaintiff filed its instant summary judgment motion on December 22, 2006, asking the Court to summarily dismiss the remaining count of Defendant's counterclaim. On March 14, 2007, Defendant filed a Resistance to Plaintiff's motion, and also filed his own motion for summary judgment, requesting that Plaintiff's Complaint be summarily

2

dismissed. On April 16, 2007, Plaintiff filed a Reply and Resistance. On April 26, 2007, Defendant filed a Reply.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids

3

summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## IV. FACTUAL BACKGROUND

Beginning in July 2002, nine retail installment contracts were executed for farm equipment separately purchased from Walterman Implement, Inc. Each of these contracts contained the name and address of Defendant as the "buyer" and a signature indicating Defendant accepted the terms of the contract.[1] The nine retail installment contracts were subsequently assigned to Plaintiff.

Defendant denies signing any of the retail installment contracts. Defendant further denies purchasing or authorizing anyone to purchase any of the farm equipment listed on the retail installment contracts. Defendant asserts that he did not become aware of the contracts until after this litigation had been commenced.

---

[1] The nine retail installment contracts included:
  (1)  Contract dated July 10, 2002 for the purchase of a Case IH Tractor, serial number JEE0099007;
  (2)  Contract dated June 17, 2003 for the purchase of a Case IH Tractor, serial number JAZ126881;
  (3)  Contract dated October 8, 2003 for the purchase of a Case IH Corn Head, serial number HAJ034508;
  (4)  Contract dated April 30, 2004 for the purchase of a Case IH Tractor, serial number JEE0098241;
  (5)  Contract dated September 16, 2004 for the purchase of a Case IH Platform, serial number JJC0333064;
  (6)  Contract dated December 1, 2004 for the purchase of a Case IH Combine, serial number JJC0196175;
  (7)  Contract date April 22, 2005 for the purchase of a Case IH Platform, serial number JJC0329990 and a Case IH Corn Head, serial number JJC0244525;
  (8)  Contract dated May 23, 2005 for the purchase of a Case IH Tractor, serial number JEE01029640; and
  (9)  Contracted dated June 8, 2005 for the purchase of a Case IH Combine, serial number HAJ292707.

4

However, Plaintiff received payments from Defendant on the retail installment contracts. Plaintiff also sent Defendant numerous correspondence regarding the contracts to his home address in 2004 and 2005.[2] Defendant claims that his bookkeeper, Joyce Block, made the payments on the retail installment contracts without his knowledge. Defendant also maintains that his wife sorts through any mail sent to their home. Defendant asserts that his wife would have given any correspondence sent from Plaintiff to Joyce Block in order for her to take care of it.

Plaintiff claims that Defendant is currently in default under the terms of the retail installment contracts.[3] Specifically, Plaintiff asserts that Defendant has failed to make timely payments and failed to maintain the equipment/collateral secured by the retail installment contracts at the location identified in the contracts. Other facts that are significant for making the determinations on the motions for summary judgment will be discussed, as necessary, in the Court's consideration of the legal issues presented.

---

[2] The record contains correspondence sent from Plaintiff to Defendant at his home on: May 6, 2004, June 14, 2004, July 21, 2004, August 20, 2004, November 1, 2004, November 4, 2004, December 1, 2004, December 14, 2004, January 3, 2005, March 1, 2005, April 4, 2005, May 2, 2005, May 5, 2005, May 18, 2005, June 12, 2005, June 14, 2005, June 19, 2005, August 1, 2005, and September 1, 2005.

[3] According to Plaintiff, as of December 1, 2005, the following outstanding balances on the nine retail installment contracts are owed by Defendant:
  (1)    $37,611.62 on the July 10, 2002 contract.
  (2)    $55,110.37 on the June 17, 2003 contract.
  (3)    $23,434.93 on the October 8, 2003 contract.
  (4)    $82,683.35 on the April 30, 2004 contract.
  (5)    $17,468.31 on the September 10, 2004 contract.
  (6)    $72,129.14 on the December 1, 2004 contract.
  (7)    $29,361.53 on the April 22, 2005 contract.
  (8)    $144,840.05 on the May 23, 2005 contract.
  (9)    $141,923.97 on the June 8, 2005 contract.

5

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In Count III of his Counterclaim, Defendant claims that Plaintiff's "initiation of this litigation" constitutes abuse of process. Plaintiff argues that it is entitled to summary judgment on this Count because Defendant has failed to present facts which would constitute abuse of process. According to Plaintiff, it merely utilized the legal process as it was intended, and filed its Complaint and First Amended Complaint against Defendant because it believes he is liable for the amounts due on the nine retail installment contracts. Defendant responds that Plaintiff's allegations of conspiracy (Count II), aiding and abetting (Count III), and fraudulent misrepresentation (Count IV) in its First Amended Complaint have no basis in fact and were filed for an improper purpose. Specifically, Defendant argues that a reasonable jury could infer that the additional claims were filed solely for the purpose of improperly coercing him into paying money on retail installment contracts that he neither signed nor authorized.

Under Iowa law, "[a]buse of process is 'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001) (quoting *Fuller v. Local Union No. 106*, 567 N.W.2d 419, 421 (Iowa 1997)).[4] In order to prove an abuse of process claim, three elements must be shown: "(1) the use of a legal process (2) in an improper or unauthorized manner (3) that causes the plaintiff to suffer damages as a result of that abuse." *Id.*

The first element of an abuse of process claim requires Defendant to show that Plaintiff used a legal process. The Iowa Supreme Court addressed the definition of "legal process" in *Fuller*:

---

[4] This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). When a federal court sits in diversity jurisdiction, it applies the law of the forum state, in this case Iowa. *DeJong v. Sioux Center, Iowa*, 168 F.3d 1115, 1119 (8th Cir. 1999).

Case 6:05-cv-02087-JSS   Document 43   Filed 05/18/07   Page 6 of 22

One authority defines the required "legal process" as "process which emanates from or rests upon court authority, and which constitutes a direction or demand that the person to whom it is addressed perform or refrain from doing some prescribed act." 1 Am.Jur.2d *Abuse of Process* § 2, at 411 (1994). Another commentator states that "it is clear that the judicial process must in some manner be involved" in order to meet the first element. W. Page Keaton et al., *Prosser and Keaton on the Law of Torts* § 121, at 898 (5th ed. 1984). . . . The Massachusetts court of appeals has defined process as "the papers issued by a court to bring a party or property within its jurisdiction, *e.g.*, a writ of attachment, the process used to initiate a civil action, or the process related to the bringing of criminal charges." *Chemawa Country Golf, Inc. v. Wnuk*, 402 N.E.2d 1069, 1071 (1980).

*Fuller*, 567 N.W.2d at 422. Plaintiff does not dispute that filing its Complaint and First Amended Complaint constitutes the use of a "legal process." Thus, Defendant meets the first element of his abuse of process claim.

The second element of an abuse of process claim requires Defendant to show that Plaintiff used the legal process primarily for an impermissible or illegal reason. *See Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990) (citing *Grell v. Poulsen*, 389 N.W.2d 661, 663 (Iowa 1986)). The second element of an abuse of process claim is difficult to establish. *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 209 (Iowa 1995). *See also Thomas v. Marion County*, 652 N.W.2d 183, 186 (Iowa 2002) ("Abuse of process claims routinely fail under the high burden we require for the second element."). The second element in an abuse of process claim requires evidence that "the person committed some act in the use of process that was not proper in the regular prosecution of the proceeding." *Grell*, 389 N.W.2d at 664. If the process is used for the purpose for which it is intended, then there is no action for abuse of process, even if there is an incidental motive of spite or an ulterior purpose or benefit. *Berryhill v. Hatt*, 428 N.W.2d 647, 651 (Iowa 1988) (citing *Grell*, 389 N.W.2d at 663); *see also* Restatement (Second) of Torts, § 682 (1977) cmt. *b* (same); *Johnson*, 533 N.W.2d at 209 ("An abuse of process defendant

7

'is not liable if he [or she] has done no more than carry the process to its authorized conclusion, even with bad intentions.'" (quoting *Wilson*, 464 N.W.2d at 267)); *Palmer v. Tandem Management Services, Inc.*, 505 N.W.2d 813, 817 (Iowa 1993) ("Proof of an improper motive by the person filing the lawsuit for even a malicious purpose does not satisfy this element."); *Tomash v. John Deere Industrial Equipment Co.*, 399 N.W.2d 387, 390-91 (Iowa 1987) ("[I]f an individual does no more than initiate and prosecute a criminal or civil action to its authorized conclusion, no abuse of process can be shown, regardless of the individual's malicious intent in doing so.").

Even viewing the evidence in the light most favorable to Defendant, he is unable to meet the second element of his abuse of process claim. There is significant factual support for Plaintiff's claims. Specifically, Plaintiff's additional claims are supported by the following facts: (1) Defendant received payment notices and other correspondence from Plaintiff on the nine retail installment contracts; (2) Defendant directed his wife, Betty McCandless, to forward any correspondence from Plaintiff to his secretary, Joyce Block; (3) Defendant directed Block to seek reimbursement from Walterman Implement, Inc. prior to making payments on the nine retail installment contracts; (4) after receiving reimbursement from Walterman Implement, Inc., Defendant made payments on the retail installment contracts from his bank account; and (5) Defendant received benefits from Walterman Implement, Inc., including the use of equipment at no cost and the payment of an obligation to John Deere Credit. Based on these facts, Plaintiff properly amended its initial complaint to include claims of conspiracy[5] and aiding and abetting.[6] In amending

---

[5] A conspiracy is a combination of two or more people working together in concert to accomplish an unlawful end or a lawful end by unlawful means. *See Tubbs v. United Cent. Bank, N.A., Des Moines*, 451 N.W.2d 177, 183-84 (Iowa 1990). The facts set forth above support Plaintiff's filing a conspiracy claim against Defendant.

[6] Aiding and abetting involves a situation where one party knows that the other party's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other party in such conduct. *See Ezzone v. Riccardi*, 525 N.W.2d (continued...)

8

its complaint, Plaintiff did not use the legal process for an impermissible or illegal purpose. Rather, Plaintiff used the legal process for its intended purpose. Accordingly, the Court concludes that Defendant does not meet the high burden required by the second element for an abuse of process claim. Therefore, the Court finds that Plaintiff is entitled to summary judgment on Count III of Defendant's counterclaim.

## VI. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Breach of Contract

In Count I of its First Amended Complaint, Plaintiff claims breach of contract. In its breach of contract claim, Plaintiff alleges that Defendant performed or offered to perform all of the obligations under the nine retail installment contracts. According to Plaintiff, Defendant breached these contracts by failing to make timely payments, and failing to maintain the equipment at the location identified in the contracts. Defendant argues that he is entitled to summary judgment on Count I because he did not execute, sign, or authorize his signature on any of the nine retail installment contracts. Defendant asserts that he had no knowledge of the contracts and, therefore, could not breach the contracts.

An essential element required in all contracts is mutual assent. *Magnusson Agency v. Public Entity Nat. Company-Midwest*, 560 N.W.2d 20, 26 (citing *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 285). Mutual assent is generally given through an offer and acceptance. *Id.* "An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his [or her] assent to that bargain is invited and will conclude it.'" *Id.* (quoting Restatement (Second) of Contracts § 24 (1981)). "[A]n offer must also be certain of its terms and requirements." *Magnusson Agency*, 560 N.W.2d at 26 (citations omitted). Acceptance of the offer is also

---

[6](...continued)

388, 398 (Iowa 1994) (citing Restatement (Second) of Torts § 876(b), at 315 (1979)). The facts set forth above support Plaintiff's filing an aiding and abetting claim against Defendant.

Case 6:05-cv-02087-JSS   Document 43   Filed 05/18/07   Page 9 of 22

required for a binding contract. *Id.* (citation omitted). Defendant argues in this case that there was no assent or acceptance.

In an affidavit filed in support of his motion for summary judgment, Defendant denies signing his name to any of the nine retail installment contracts identified in Plaintiff's First Amended Complaint.[7] Defendant further states that he did not authorize anyone to sign the retail installment contracts on his behalf.[8] Defendant also claims that until the original Complaint was filed in this matter, he was unaware of the existence of the retail installment contracts or that anyone had signed his name to them.[9] Defendant also contends that he did not learn that his bookkeeper had received money from Walterman Implement, Inc. for the retail installment contracts until after litigation in this matter commenced, or that after receiving the money from Walterman Implement, Inc., that she issued checks drawn on his business bank account for the purpose of making payments to Plaintiff on the contracts.[10] Lastly, Defendant asserts that, "[i]t was not until after the Plaintiff's filing of the involuntary bankruptcy proceeding against Walterman Implement, Inc. that I learned of any fraudulent activity on the part of Walterman Implement, Inc. or Leon Walterman. At no time did I ever enter into any agreement of any kind to assist Mr. Walterman in carrying out any fraud or other dishonest activity nor did I at any time intend to provide any such assistance to him."[11]

Plaintiff argues that even if Defendant did not personally sign the retail installment contracts, he partially performed and/or ratified the contracts by making payments under

---

[7] Defendant's Affidavit in Support of Defendant's Motion for Summary Judgment, at ¶ 3. (Defendant's Appendix at 56)

[8] *Id.*

[9] *Id.* at ¶ 6. (Defendant's Appendix at 57)

[10] *Id.* at ¶ 9. (Defendant's Appendix at 57)

[11] *Id.* at ¶ 12. (Defendant's Appendix at 58)

10

the contracts and being secretly reimbursed by Walterman Implement, Inc. for making those payments.[12] Defendant argues that Plaintiff cannot, as a matter of law, establish ratification because there is no evidence of his intent to ratify the retail installment contracts or that he had full knowledge of the facts. Specifically, Defendant asserts that he was unaware of the forged signatures on the retail installment contracts.

In regard to ratification of a contract, the Iowa Supreme Court has stated:

> A party to an agreement induced by fraud or deceit is held to the duty of electing either to execute or rescind the contract at the time of discovering the wrong, or within a reasonable time thereafter. . . . Taking any benefit or changing the condition of the property bought after learning of the fraud has been adjudged a waiver of the right to rescind.

*Staly v. McNerney*, 10 N.W.2d 584, 589 (Iowa 1943); *see also* Restatement (Second) of Contracts § 380 (1981). The Restatement provides:

---

[12] In her deposition testimony, Joyce Block, Defendant's secretary, discussed how she paid Plaintiff and how Walterman Implement, Inc. reimbursed Defendant for his payments. Block testified that she was instructed by Defendant to call Donna (Zmolek) at Walterman Implement, Inc. to request reimbursement before making any payments on the nine retail installment contracts. Block's deposition testimony provides:

Q: What dealings or conversations have you had with Donna?
A: I would call her when [Defendant] would bring in a bill or when someone from the [Defendant's] family would bring in a Case bill. I was instructed to get a check from Walterman's before I would pay the bill. And I would fax -- call her or fax her with an invoice, and she . . . came in and brought the check in.
Q: How did you know to contact Donna?
A: I'm -- I think [Defendant] had told me to contact Donna, that she was the one to be in charge of --

. . .

Q: . . . Where was the first time [Defendant] brought you an invoice where you were then told to contact Donna at Walterman Implement?
A: It would have been at the office, at [Defendant's] in my office. He would have brought the bill in and said to contact Donna and -- at Walterman's and get a check before I would pay the bills.

Plaintiff's Appendix at 57. (Joyce Block Deposition, p. 30, l. 23 - p. 31, l. 22)

11

(2) The power of a party to avoid a contract for mistake or misrepresentation is lost if after he knows or has reason to know of the mistake or of the misrepresentation if it is non-fraudulent or knows of the misrepresentation if it is fraudulent, he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.

Restatement (Second) of Contracts § 380(2) (1981). Comment *a* to § 380 provides:

*a. Ratification by affirmance.* A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as "affirmance" and has the effect of ratifying the contract.

Restatement (Second) of Contracts § 380(2) (1981) cmt. *a.*

Plaintiff contends that even though Defendant claims the signatures on the contracts are forgeries and that he had no knowledge of the contracts, his actions of making payments on the retail installment contracts and accepting reimbursement for those payments from Walterman Implement, Inc., constitutes ratification or affirmance of the contracts. Plaintiff sets forth the following facts to support its assertion that Defendant, by his actions, ratified or affirmed the retail installment contracts: (1) Defendant instructed his wife to give Joyce Block any payment notices she received from Plaintiff;[13] (2) Defendant's wife specifically discussed with him a payment notice from Plaintiff

---

[13] The deposition testimony of Defendant's wife, Betty McCandless, provides:

> Q:  Did you ever take any bills related to the farming operations to Joyce Block?
>
> A:  Yes.
>
> . . .
>
> Q:  Why did you take bills related to the farming operation to Joyce Block?
>
> A:  [Defendant] specified where these bills were to go.
>
> Q:  Which bills are you taking about?
>
> A:  These ones from [Plaintiff].

Plaintiff's Supplemental Appendix at 41. (Betty McCandless Deposition, p. 19, l. 17-19, 24-25 - p. 20, l. 4)

12

regarding a Case tractor, and after their discussion, Defendant instructed her to deliver that payment to notice to Joyce Block;[14] (3) Defendant personally instructed Joyce Block to contact Donna (Zmolek) at Walterman Implement, Inc. to get a check from Walterman prior to paying the invoices from Plaintiff relating to the retail installment contracts;[15] (4) Defendant instructed Joyce Block to contact Allen Scott at Walterman Implement, Inc. when reimbursement payments from Walterman were late;[16] (5) Allen Scott occasionally received telephone calls from Joyce Block regarding when Defendant could get checks

---

[14] Betty McCandless' deposition testimony provides:

Q: So, then, if you glanced at all the invoices to see what equipment it related to and you were aware or knew that they never had any red tractors, what would you have done with respect to this invoice that related to a Case IH tractor?

A: . . . I asked [Defendant] -- When he came home that night, I says, "Hey, did you guys buy any red tractors?" And he says, "No. Why?" And I told him that it was listed on this statement from Plaintiff. And he says, "Well," he says, "must be a mistake. Call them up."

Q: And did you?

A: I called them, yes. . . . When [Defendant] came home, I told him that she said we have a red tractor. And I says, "I told her we didn't have one." And he said, "Well, maybe they made a mistake at Walterman's and got somebody else's tractor on ours." He said, "Take it out to Joyce and she will call or look into it," whatever.

Plaintiff's Supplemental Appendix at 43. (Betty McCandless Deposition, p. 30, l. 16-21, 24-25 - p. 31, l. 7, p. 32, l. 1-7)

[15] *See* footnote 11.

[16] Joyce Block's deposition testimony provides:

Q: Other than the conversations or the dealings that you've told me you've had with Donna at Walterman, was there anyone else at Walterman Implement that you had dealings or conversations with?

A: I have called an Allen when payments were late.

Q: And who instructed you to call Allen?

A: [Defendant].

Plaintiff's Appendix at 58. (Joyce Block Deposition, p. 34, l. 18-25 - p. 35, l. 1)

13

from Walterman Implement, Inc. in order to make the payments on the retail installment contracts;[17] and (6) Defendant personally contacted Allen Scott requesting reimbursement for payments due on equipment he did not have.[18]

---

[17] Allen Scott's deposition testimony provides:

> Q:   Did you ever have any conversations that you can recall with a woman named Joyce Block?
>
> . . .
>
> A:   Okay.  Yes.  She would call once in awhile.
> Q:   Do you recall ever talking with her?
> A:   I believe I did.
> Q:   Okay.  And what do you recall of those conversations?
> A:   Basically the same thing.  [Defendant] wanting to know when they could get the check to make the payment.

Plaintiff's Supplemental Appendix at 57.  (Allen Scott Deposition, p. 193, l. 25 - p. 194, l. 1, p. 194, l. 6-14)

[18] Allen Scott's deposition testimony provides:

> Q:   Did [Defendant] . . . ever call you?
> A:   Yes.
>
> . . .
>
> Q:   Tell me, first of all, what discussion you recall having with [Defendant] about getting reimbursed for payments?
> A:   He would say, "Well, you've got a payment coming due," and it was one of Leon's, and I would tell him, "I'll let him know," and give a note to Leon that [Defendant] called.
>
> . . .
>
> Q:   And as I recall what you said, he'd tell you he had a payment coming due and it was on one of Leon's deals?
> A:   Yes.
> Q:   Did you ask him what he meant by that?
> A:   No.
> Q:   What did you understand that to mean?
> A:   That it was one of Leon's deals.
> Q:   Was that that it was on a contract where [Defendant] didn't have the equipment?
> A:   That's what I assumed it was.
> Q:   Why did you assume that?
> A:   Because he was calling for Leon to make the payment.

(continued...)

14

While Defendant denies signing or even having knowledge of the contracts, the evidence, when viewed in the light most favorable to Plaintiff, supports a finding that Defendant knew of the contracts and ratified or affirmed the contracts by making payments on them. One who otherwise may avoid performance under a contract may forfeit that right by engaging in actions which ratify or affirm the contract. *See* Restatement (Second) of Contracts § 380(2) (1981) cmt. *a* ("A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as "affirmance" and has the effect of ratifying the contract."). Thus, Defendant's actions of making payments on the retail installment contracts and accepting reimbursement for those payments from Walterman indicates that he affirmed or ratified the contracts.

The Court, having viewed the record in the light most favorable to Plaintiff, finds that Plaintiff has presented evidence that establishes genuine issues of material fact as to whether Defendant had knowledge of the retail installment contracts and whether he knowingly made payments on the contracts and accepted reimbursement from Walterman Implement, Inc. for those payments. The Court concludes that the doctrine of ratification or affirmation may be applicable here. Therefore, the court determines that Defendant's motion for summary judgment on Count I should be denied.

### B. Conspiracy

In Count II of its First Amended Complaint, Plaintiff alleges conspiracy. Specifically, Plaintiff claims that Defendant participated in a conspiracy with Walterman Implement, Inc. by signing or ratifying his signature on nine retail installment contracts

---

[18] (...continued)
Plaintiff's Supplemental Appendix at 56-57. (Allen Scott Deposition, p. 192, l. 1-3, 10-16, p. 193, l. 1-14) The above colloquy refers to "Leon's deals;" in his deposition, Allen Scott explained "Leon's deals" in the following manner: Leon Walterman would write a check to a farmer for equipment he or she did not have and then the farmer would write a check to make the payment on the equipment. Scott testified that when Leon made these types of payments he called them his "deals." *See* Plaintiff's Supplemental Appendix at 56. (Allen Scott Deposition, p. 190, l. 17-25 - p. 191, l. 25)

secured by equipment which was never purchased by Defendant. Defendant argues that there is no evidence that he entered into an agreement with Walterman Implement, Inc., Leon Walterman, or anyone else to commit a wrong against another as required for conspiracy. Defendant further argues that he did not engage in the specific conduct identified by Plaintiff as constituting participation in the alleged conspiracy.

Under Iowa law, "'[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful.'" *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 171 (Iowa 2002) (quoting *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 232 (Iowa 1977)); *see also Tubbs v. United Cent. Bank, N.A., Des Moines*, 451 N.W.2d 177, 183-84 (Iowa 1990) ("Conspiracy is, basically, a combination of two or more persons to accomplish, through concerted actions, an unlawful end or a lawful end by unlawful means."); *Countryman v. Mt. Pleasant Bank & Trust Co.*, 357 N.W.2d 599, 602 (Iowa 1984) (same). Iowa law also looks to the Restatement (Second) of Torts section 876 to set the parameters of a conspiracy claim. *Wright*, 652 N.W.2d at 171-72; *Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994). The Restatement provides that: "[A] person becomes subject to liability for harm caused by the tortious conduct of another when that person: (a) does a tortious act in concert with the other or pursuant to a common design with the other (traditional conspiracy). . . ." *Ezzone*, 525 N.W.2d at 398 (citing Restatement (Second) of Torts § 876(a), at 315 (1979)).

Additionally, "[f]or conspiracy, an agreement must exist between the two persons to commit a wrong against another. The agreement must involve some mutual mental action coupled with an intent to commit the act that causes injury." *Ezzone*, 525 N.W.2d at 398 (citing *Adam v. Mt. Pleasant Bank & Trust Co.*, 387 N.W.2d 771, 773 (Iowa 1986)); *see also Doe v. Baxter Healthcare Corp.*, 380 F.3d 399, 410 (8th Cir. 2004) ("A civil conspiracy is an agreement between two or more people to commit a wrong against another person."). "An agreement sufficient to impose liability results only from a

16

defendant's knowing and voluntary participation in a common scheme to take action, lawful or unlawful, that ultimately subjects the actor to liability to another." *Wright*, 652 N.W.2d at 174 (citing 16 Am. Jur. 2d *Conspiracy* § 51, at 276). "Speculation, relationship, or association and companionship do not establish a conspiracy." *Ezzone*, 525 N.W.2d at 398 (citing *American Sec. Benevolent Ass'n, Inc. v. District Court of Black Hawk County*, 147 N.W.2d 55, 63 (Iowa 1966)). Furthermore, Proof of conspiracy may be established by circumstantial evidence as well as by direct evidence. *Holsinger v. Herring*, 224 N.W. 766, 769 (Iowa 1929) (citations omitted); *see also Mowry v. Reinking*, 213 N.W. 274, 278 (Iowa 1927) ("It is elementary that a conspiracy may be proven by either direct or circumstantial evidence."); *Spencer v. Read*, 217 F. 508 (8th Cir. 1914) ("In the absence of direct evidence of an unlawful conspiracy, a wide latitude is allowed in admitting circumstantial evidence to prove its existence.").

In his reply brief, Defendant argues that there are no issues of material fact on Plaintiff's conspiracy claim because there is no evidence of a common scheme or that Defendant knew of such a scheme or participated knowingly or voluntarily in such a scheme. *See Wright*, 652 N.W.2d at 174. The Court finds that the facts discussed in section *VI.A* above and the deposition testimony of James F. Longe,[19] when viewed in the

---

[19] James F. Longe's deposition testimony provides:

| | |
|---|---|
| Q: | What information do you have that would support a claim that [Defendant] knew Leon Walterman was defrauding [Plaintiff]? |
| A: | The only thing that comes to mind would be the times in which [Defendant] would confirm having equipment during a [Plaintiff] audit. |
| Q: | Let me -- I'm sorry. Please go ahead. |
| A: | During the [Plaintiff] audit, he was from time to time asked to confirm that the equipment that Walterman said was at the farm was at the farm. |
| Q: | Anything else? |
| A: | And the fact that [Defendant] was reimbursed from time to time from Walterman for making payments on equipment that he doesn't have. |

(continued...)

17

light most favorable to Plaintiff, establish a genuine issue of material fact as to whether Defendant conspired with Walterman. Accordingly, the Court determines that Defendant's motion for summary judgment on Count II should be denied.

## C. Aiding and Abetting

In Count III of its First Amended Complaint, Plaintiff alleges aiding and abetting. Specifically, Plaintiff claims that Defendant had knowledge that Walterman Implement, Inc. and Leon Walterman were defrauding it. Plaintiff further claims that Defendant substantially assisted Walterman by signing or ratifying his signature on nine retail installment contracts secured by equipment which was never purchased by Defendant, and by making payments on the contracts with funds received from Walterman. Defendant denies that he had any knowledge that Walterman was perpetrating a fraud on Plaintiff, or that he provided substantial assistance to Walterman in carrying out the alleged fraud.

Iowa law follows the Restatement (Second) of Torts § 876 for an aiding and abetting claim. *See Ezzone*, 525 N.W.2d at 398. The Restatement provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> . . .
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. . . .

---

[19] (...continued)

. . .

Q:    Okay. Now, it's your understanding, I take it, that [Defendant] somehow verified that he had equipment that he didn't actually have?

A:    I believe there are instances of where [Plaintiff] auditors have inquired of whether he had equipment at the farm or not and the auditor was -- had affirmative response either by letter or by phone and then later determined that may not have been correct.

Plaintiff's Supplemental Appendix at 28. (Deposition of James F. Longe, p. 59, l. 15-25 - p. 60, l. 4, 7-15)

18

Restatement (Second) of Torts § 876(b), at 315 (1979). Aiding and abetting requires "a wrong to the primary party, knowledge of the wrong on the part of the aider, and substantial assistance by the aider in the achievement of the primary violation. *Ezzone*, 525 N.W.2d at 398 (citing *Tubbs*, 451 N.W.2d at 182). The Eighth Circuit has also discussed aiding and abetting in the context of § 876(b) of the Restatement. *In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation v. The Dow Chemical Co.*, 113 F.3d 1484, 1495 (8th Cir. 1997). In *TMJ*, the Eighth Circuit stated:

> Courts have recognized three basic requirements for aiding and abetting liability: (1) the primary actor must commit a wrongful act that causes an injury; (2) the aider and abettor must be *generally aware* of his [or her] role in the overall wrongful activity at the time assistance is provided; and (3) the aider and abettor must knowingly and substantially assist the wrongful act.

*Id.* (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (emphasis added). "General awareness" by an aider and abettor is sufficient to meet the knowledge component of an aiding and abetting claim. *Tubbs*, 451 N.W.2d at 182.[20]

In his reply brief, Defendant contends that Plaintiff has presented no evidence of even his "general awareness" that Walterman was engaged in fraud. Defendant further asserts that Plaintiff has presented no evidence that he knowingly provided substantial assistance to Walterman in carrying out the fraud. When viewed in the light most favorable to Plaintiff, however, the Court finds that Plaintiff presented evidence that Defendant had a "general awareness" that Walterman was engaged in fraud. Plaintiff presented evidence in deposition testimony from Joyce Block, Defendant's secretary, which suggests that Defendant instructed her to contact Donna Zmolek at Walterman

---

[20] In *Tubbs*, the Iowa Supreme Court applied the "general awareness" standard to a situation where it was alleged that a bank aided and abetted another bank in committing fraud, breaches of fiduciary duties, and securities law violations. *Tubbs*, 451 N.W.2d at 182. *See also Federal Deposit Ins. Corp. v. First Interstate Bank of Des Moines, N.A.*, 885 F.2d 423, 430-31 (8th Cir. 1989) (approving the "general awareness" standard for aiding and abetting).

Implement, Inc. to get reimbursement checks from Walterman prior to making payments on the retail installment contracts for farm equipment which was not in Defendant's possession.[21] Joyce Block also testified that Defendant instructed her to contact Allen Scott at Walterman Implement, Inc. when the reimbursement checks from Walterman were late.[22] Allen Scott testified in his deposition that he received telephone calls from both Joyce Block and Defendant inquiring when Defendant would receive reimbursement checks, so that he could make his payments on the retail installment contracts.[23] Lastly, James F. Longe's deposition testimony suggests that Defendant had knowledge of the fraud being perpetrated by Walterman.[24] The Court determines that a genuine issue of material fact has been established by Plaintiff regarding whether Defendant knowingly provided substantial assistance to Walterman in carrying out the fraud. Therefore, the Court finds that Defendant's motion for summary judgment on Count III should be denied.

### D. Fraudulent Misrepresentation

In Count IV of its First Amended Complaint, Plaintiff claims fraudulent misrepresentation. In its fraudulent misrepresentation claim, Plaintiff alleges that Defendant represented to it that he would maintain the equipment at the location identified in the contracts, keep the equipment free of all liens, encumbrances, and security interests, and not sell, lease, or otherwise dispose of the equipment. Plaintiff contends that Defendant made these representations knowing they were false and with the intent to deceive it. Defendant argues that he is entitled to summary judgment on Count IV because he did not execute, sign or authorize his signature on any of the contracts; and therefore, did not make any of the representations alleged by Plaintiff.

---

[21] *See* footnote 14.

[22] *See* footnote 15.

[23] *See* footnote 16 and 17.

[24] *See* footnote 19.

"The elements of fraudulent misrepresentation are: (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent; (6) justifiable reliance; and (7) resulting injury. *Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005) (citing *Lloyd v. Drake University*, 686 N.W.2d 225, 233 (Iowa 2004); *Hyler v. Garner*, 548 N.W.2d 864, 872 (Iowa 1996)). The breach of a promise in itself is not enough to establish fraudulent intent. *Id.* at 23 (citing *Magnusson Agency*, 560 N.W.2d at 29). The first three elements require a material misrepresentation to be made. *Magnusson Agency*, 560 N.W.2d at 28 (citing *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996)). "A fraudulent misrepresentation claim also requires that the defendant knew the representation was false (scienter), and that the defendant intended to deceive the plaintiff." *Magnusson Agency*, 560 N.W.2d at 28 (citing *McGough v. Gabus*, 526 N.W.2d 328, 331-32 (Iowa 1995)); *see also Hyler*, 548 N.W.2d at 871 (discussing scienter and intent to deceive).

While Defendant denies signing or even having knowledge of the contracts, the evidence,[25] when viewed in the light most favorable to Plaintiff, supports a finding that Defendant knew of the contracts and that he did not possess the equipment secured by the contracts, made payments on the contracts, and was secretly reimbursed by Walterman for making those payments. Such a finding is consistent with the elements of fraudulent misrepresentation.[26] Therefore, the Court, having viewed the record in the light most favorable to Plaintiff, finds that Plaintiff has presented evidence that establishes a genuine issue of material fact as to whether Defendant made fraudulent misrepresentations to

---

[25] *See* the facts set forth by Plaintiff in section *IV.A* of this ruling; *see also* footnote 19 (James F. Longe's deposition testimony).

[26] Defendant's knowledge of the contracts and his payments on those contracts for equipment which he did not possess, and Walterman's reimbursement to Defendant for those payments suggests that Defendant made false representations which he knew were false, and which were meant to deceive Plaintiff. *See Smidt*, 695 N.W.2d at 22 (setting forth the elements of fraudulent misrepresentation).

Case 6:05-cv-02087-JSS   Document 43   Filed 05/18/07   Page 21 of 22

Plaintiff regarding the retail installment contracts. Accordingly, the Court determines that Defendant's motion for summary judgment on Count IV should be denied.

## VII.  CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff's Motion for Summary Judgment on Count III of Defendant's Counterclaim is granted and Defendant's Motion for Summary Judgment on Counts I-IV of Plaintiff's First Amended Complaint is denied in its entirety.

## ORDER

**IT IS THEREFORE ORDERED** as follows:

1.  The Motion for Summary Judgment (docket number 20) filed by Plaintiff is **GRANTED**.  Count III of Defendant's Counterclaim is hereby **DISMISSED**.

2.  The Motion for Summary Judgment (docket number 31) filed by Defendant is **DENIED**.

DATED this 18th day of May, 2007.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA